**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **DONYELL MAYHEW,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 08 C 4154** |
| | ) | |
| **DANIEL GUTIERREZ, JOHN DOLAN,** | ) | |
| **and CITY OF CHICAGO,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

Plaintiff Donyell Mayhew has sued two Chicago police officers and the City of Chicago under 42 U.S.C. § 1983, alleging that the officers used excessive force in arresting him and that the violation was caused by a policy or custom of the City. The City has moved for summary judgment on Mayhew's section 1983 claim; the officers have not moved for summary judgment. For the reasons stated below, the Court grants the City's motion.

**Facts**

Mayhew claims that Chicago police officers John Dolan and Daniel Gutierrez violated his Fourth Amendment rights by using excessive force in arresting him on September 27, 2006.

Mayhew has also asserted a section 1983 claim against the City of Chicago. He alleges that the City was deliberately indifferent to the fact that its investigatory and disciplinary oversight of police misconduct was deficient and ineffectual. Mayhew

contends this policy led officers to believe they would not be sanctioned for unlawful behavior.  He alleges this was a proximate cause of Dolan and Gutierrez's use of excessive force against him.

On September 27, 2006, Dolan and Gutierrez arrested Mayhew for armed robbery and aggravated battery.  Mayhew alleges they used excessive force, repeatedly punching and kicking him even though he did not resist.  Defendants contend the force they used was reasonable.  Gutierrez has testified that officers periodically watch training videos regarding the proper use of force during an arrest.

On October 23, 2006, Mayhew filed a three-page complaint with the Chicago Police Department's Office of Professional Standards ("OPS") alleging he had been subjected to excessive force during his arrest.  At the time, OPS was a division of the Chicago Police Department assigned to investigate allegations of police misconduct.  OPS has since been supplanted by a different agency called the Independent Police Review Authority.

OPS investigator Shannon Hayes was assigned to investigate Mayhew's complaint.  Hayes interviewed Mayhew on October 23, 2006 and prepared a written statement.  On that same date, she obtained the officers' reports regarding the incident.  From that time forward, Hayes submitted an extension request every thirty days the investigation remained open, nearly two and one-half years.  Her supervisor approved these requests *en masse* on February 24, 2009.

As part of her investigation, Hayes requested Mayhew's medical records from two hospitals and sent unanswered letters to two potential civilian witnesses, Patricia Green and Christina Collins.  Hayes received the medical records on November 28,

2

2006.  After reviewing these and the police officers' reports, Hayes reported that she

"had reason to believe that Mr. Mayhew's allegations of misconduct weren't truthful."

She believed that the level of injury shown by the medical records, which described

them as "mild," did not match the severity of the beating Mayhew had alleged.

Hayes' investigation seems to have been on hold – or at least nothing took place

– for a two-year period after that, from November 2006 through December 2008.

Defendants do not attempt to explain the delay and do not suggest that Hayes was ever

asked to explain why things were taking so long.  On December 15, 2008, Hayes

obtained additional information concerning the case.  The next day, she requested

reports from three accused officers and nine officers who witnessed  the events.  She

received the reports in January-February, 2009.  On February 23, 2009, Hayes

prepared a report in which she concluded that the allegations against Dolan, Gutierrez

and another officer were "unfounded."

Mayhew has also offered evidence regarding OPS investigations in general.

This evidence reflects that in 2006-2007, OPS investigators took more than 300 days to

complete investigations in many instances, with some investigations lasting much

longer, anywhere from 370 days (one year) to 976 days (nearly three years).  From

January 1, 2006 through October 31, 2006, OPS completed 2,048 investigations of

citizen complaints.  Allegations of police misconduct were sustained forty-seven times,

which represents only a little over two percent of the total number of completed

investigations.

The City concedes that, at the time of Mayhew's complaint, OPS was "extremely

understaffed" by at least twenty-three investigators compared to the number of

budgeted positions.  The City also concedes that Hayes had a high caseload at this time.

Dolan and Gutierrez have testified that they were unaware of the OPS complaint Mayhew filed against them until this lawsuit was filed.  Gutierrez has testified that he was unaware of the length of typical OPS investigations.  He was, however, able to estimate the number of prior complaints made against him, and he was able to describe the particulars of one of those complaints.  Dolan was also able to describe the circumstances of prior complaints against him, though he was unable to identify particular complaints.  Dolan testified that he was unaware of the length of OPS investigations or the process OPS used.

## Discussion

Summary judgment is appropriate when the pleadings, depositions, and affidavits on file demonstrate that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  The moving party bears the initial burden of demonstrating that there is no genuine issue of material fact.  *Id.* at 321.  Once the moving party has met the initial burden, the nonmoving party must then "go beyond the pleadings" and "designate specific facts" showing that a genuine issue of material fact exists and that there is evidence on which a jury could reasonably find for the nonmoving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Insolia v. Phillip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000).  In considering a motion for summary judgment, the Court views the evidence and draws

reasonable inferences in the light most favorable to the nonmoving party.  *Scott v. Harris*, 550 U.S. 372, 378 (2007).

In *Monell v. New York City Dept. of Social Services*, 436 U.S. 658 (1978), the Supreme Court ruled that a municipality can be held liable under section 1983 for a constitutional violation committed by its employee only when the employee's unconstitutional action implements or executes a policy of the municipality.  *Id.* at 690. The Court assumes for purposes of the present motion that Mayhew can establish that the officers used excessive force in violation of his constitutional rights; that there was a pattern of inadequate and/or unreasonably delayed investigations by OPS; and that the City was deliberately indifferent to this.

To sustain his section 1983 claim against the City, Mayhew must prove that its alleged policy of inadequately investigating claims of excessive force was the "direct cause" or "moving force" of his constitutional injury.  *See Minix v. Canarecci*, 597 F.3d 824, 832 (7th Cir. 2010); *see also City of Canton v. Harris*, 489 U.S. 378, 387 (1989) ("our first inquiry . . . is the question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation").  When a plaintiff claims that an express municipal policy violates federal law, as with the maternity leave policy at issue in *Monell*, causation is a straightforward issue.  *See Bd. of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 405 (1997).  Claims involving non-express policies, however, present "much more difficult problems of proof" that require something beyond the "mere probability" that an omission might cause a constitutional violation.  *Id.* at 406, 412 (allegedly inadequate screening of a deputy was

5

found not to be the cause of the deputy's use of excessive force).  It is not enough to show that a municipal policy "might lead" to police misconduct.  *See City of Oklahoma City v. Tuttle*, 471 U.S. at 808, 823 n.8 (1985).  Rather, the plaintiff must show an affirmative link between the policy and the particular constitutional violation alleged.  *See id.*  "But for" causation is required.  *See Estate of Novack ex rel. Turbin v. County of Wood*, 226 F.3d 525, 532 (7th Cir. 2000); *Woodward v. Correctional Medical Servs. of Ill., Inc.*, 368 F.3d 917, 928 (7th Cir. 2004); *see also, City of Canton*, 489 U.S. at 391.

Mayhew has failed to present evidence from which a reasonable jury could find that he has sustained his burden of proving causation.  His argument is that the City was deliberately indifferent to its practice of inadequately investigating and sanctioning police misconduct and that this caused Dolan and Gutierrez to use excessive force because they did not think they would be punished for doing so.  Taking the facts in the light most favorable to Mayhew, however, the officers were at most vaguely aware of OPS's processes; there is no evidence they had knowledge of the delays or inadequacies on which Mayhew bases his policy claim against the City.  And although both officers had previous complaints filed against them that were not sustained, Mayhew has provided no information about the particulars of those incidents, and nothing from which a jury could draw a reasonable inference that the outcomes of those complaints contributed in any way to the alleged violation of Mayhew's Fourth Amendment rights.

In his brief and at oral argument, Mayhew relied heavily on two cases in which judges in this district denied summary judgment on *Monell* claims against the City.  In

6

those cases, however, the plaintiffs presented far more evidence than Mayhew has been able to muster, and that evidence was sufficient to permit a finding in the plaintiff's favor on a *Monell* claim.  In *Garcia v. City of Chicago*, No. 01 C 8945, 2003 WL 1715621 (N.D. Ill. Mar. 20, 2003), the plaintiff presented evidence that rank and file officers knew of the low rate of imposition of discipline by OPS.  The plaintiff also offered expert testimony that "drawn out" investigations had "little or no deterrent effect on police misconduct."  *Id.* at *7.  Likewise, the plaintiff in *Johnson v. City of Chicago*, No. 05 C 6545, 2009 WL 1657547 (N.D. Ill. June 9, 2009), submitted evidence far different from what Mayhew has offered.  Specifically, the plaintiff pointed to the fact that one of the defendant officers could not identify the nature of many of the complaints against him and that another could not recall a single complaint lodged against him, despite the fact that at least twelve complaints had been lodged in a five-year period.  *See id.* at *10.  In addition, two other officers testified that they did not recall any training regarding how to perform their job within constitutional bounds.  *Id.* Finally, Johnson introduced expert testimony regarding the significance of the officers' lack of knowledge of the law.  *Id.*

By contrast, Mayhew offers only the fact that Dolan and Gutierrez were unaware of OPS's processes and could recall only some of the complaints previously lodged against them.  This evidence would not permit a reasonable jury to find that the officers knew or believed that OPS investigations dragged on too long or were otherwise inadequate, let alone that they believed they could use excessive force without threat of punishment.  The extraordinarily long period of time it took for OPS to investigate Mayhew's own complaint cannot be used to show causation of the alleged excessive

7

force upon Mayhew, because the investigation took place after that incident.

For these reasons, the Court concludes that Mayhew has failed to provide evidence from which a reasonable jury could find the requisite causal link between the City's alleged policy and his constitutional injury.

## Conclusion

For the reasons stated above, the Court grants the City of Chicago's motion for summary judgment [docket no. 84] on plaintiff's Monell claim, count four of his amended complaint.


_____
/s Matthew F. Kennelly
MATTHEW F. KENNELLY
United States District Judge

Date:  August 9, 2010